IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID A DIAMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-00977-CV-RK |
| ) | |
| AMERICAN FAMILY MUTUAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendant's Motion for Summary Judgment on Plaintiff's claims arising under the Family and Medical Leave Act ("FMLA"). (Doc. 24.) Plaintiff filed opposition suggestions (doc. 30), and Defendant filed reply suggestions (doc. 33). After careful consideration, the motion is **DENIED**.

## Factual Background

With the exception of a break in employment beginning in 2002 and ending in early 2003, Plaintiff was employed by Defendant from January 1999 until his discharge in February 2015. (Doc. 42 at ¶¶ 1, 2, 13.) While Plaintiff was employed by Defendant, he took FMLA leave on three occasions: prior to 2006; August 31, 2011 through December 19, 2011; and October 15, 2013 through November 6, 2013. (*Id*. at ¶¶ 18-21.) Defendant approved each of Plaintiff's requests for FMLA leave and reinstated him to the same position with the same salary and benefits upon his return from FMLA leave. (*Id.* at ¶ 22.)

On March 24, 2012, Plaintiff was hired by Ray Caudill to transfer to a Senior Catastrophe Claims Adjustor position. (*Id.* at ¶ 10.) Caudill was Plaintiff's manager from March 2012 until his discharge. (*Id.* at ¶ 28.) In this role, Plaintiff was responsible for processing catastrophic property claims for Defendant's customers. (*Id.* at ¶ 11.) Plaintiff's job duties included making many telephone calls throughout the day to insureds, witnesses, repair contractors, agents, and others. (*Id.* at ¶ 12.) Plaintiff made notes of each call in the Defendant's computer files. (*Id.*) Plaintiff remained in this position until his discharge in February 2015. (*Id.* at ¶ 13.)

On February 12, 2015, Caudill met with and issued Plaintiff his 2014 Performance Review. (*Id.* at ¶ 30.) Caudill's comments in the 2014 Performance Review were positive, and

Caudill wrote that he had seen growth and improvement in many areas over the last year. (*Id.* at ¶ 32.) In his 2014 Performance Review, Plaintiff was rated "Above Target" for one measure and "On Target" for all other measures. (*Id.* at ¶ 33.) Plaintiff testified that, during his performance review on February 12, 2015, Plaintiff told Caudill he intended to arrange for upcoming FMLA leave, and Caudill admits that Plaintiff told him he was planning to arrange for FMLA leave but that he does not remember the timing of that conversation in relation to Plaintiff's performance review. (Doc. 34 at ¶ 161.)

On Friday, February 13, 2015, a report of phone calls made to or from the phone on Plaintiff's desk was prepared for Caudill to analyze. (Doc. 42 at ¶ 35.) Caudill testified that he requested the records because he received complaints, during January and February 2015, from insureds and agents who reported they had not received follow-up calls or call-backs from Plaintiff on their claims. (Doc. 26 at ¶ 58.) Caudill pulled Defendant's claim files in which Plaintiff had written he called the insureds and compared Plaintiff's claim file entries to a 30-day phone report from his desk telephone. (Doc. 42 at ¶ 36.) Caudill has never identified to Plaintiff the customers that allegedly complained of not receiving a call and has never shown Plaintiff any notes of such complaints. (Doc. 34 at ¶ 179.) Plaintiff signed his 2014 performance review on February 16, 2015. (Doc. 42 at ¶ 34.) On February 20, 2015, a final paycheck was requested from the payroll department. (Doc. 34 at ¶ 167.) On the morning of February 24, 2015, Plaintiff was at work when he received a call on his cell phone that Caudill wanted to meet with him; Caudill met with Plaintiff; and Caudill informed Plaintiff that he was being terminated for falsifying company records. (Doc. 42 at ¶¶ 37 - 39.)

The parties dispute the following: whether Caudill made mocking and disparaging comments about Plaintiff's FMLA leave when Plaintiff returned from FMLA leave in 2013; whether, from 2013 to his termination, Plaintiff was assigned a heavier workload than other adjustors and senior adjustors; whether Plaintiff was denied help with his files when such help was provided to other adjustors; whether it was common knowledge among the employees in Plaintiff's unit that his computer was often down; whether a senior adjuster would ever use a phone other than the one on his or her desk for making business phone calls; and whether Plaintiff offered any explanation for the discrepancy between his file notes and the phone report from his desk telephone.

**Discussion**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). An issue of fact is only genuine if it has a real basis in the record, and is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations, but must point to evidence in the record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

The FMLA "entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements." *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012). Two subsections of the FMLA prohibit an employer's ability to undermine an employee's permitted leave. *Id*. Section 2615(a)(1) "makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise rights provided under the FMLA," and section 2615(a)(2) "makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA." *Brown v. Diversified Distribution Sys., LLC*, 801 F.3d 901, 907 (8th Cir. 2015) (quotations and citations omitted). The Eighth Circuit has recognized three different FLMA claims from these two subsections: (1) entitlement, (2) discrimination, and (3) retaliation. *Pulczinski*, 691 F.3d at 1005.

**I.     FMLA Claims**

As mentioned above, the Eighth Circuit recognizes three types of FMLA claims: (1) entitlement, (2) discrimination, and (3) retaliation. *Pulczinski*, 691 F.3d at 1005-1006. As recently identified in *Teetor v. Rock-Tenn Services, Inc.*:

> "An entitlement claim arises under § 2615(a)(1) when 'an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act.'" *Id.* (quoting *Pulczinski*, 691 F.3d at 1005). In an

entitlement claim, previously called an interference claim, an employee must show only that he or she was entitled to the benefit denied. *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517-18 (8th Cir. 2015).

"Discrimination claims arise under § 2615(a)(1) 'when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA.'" *Brown*, 801 F.3d at 908 (quoting *Pulczinski*, 691 F.3d at 1006); *accord* 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee ... for having exercised . . . FMLA rights."); *Massey-Diez*, 826 F.3d 1149, 1157 (8th Cir. 2016). . . . To establish a prima facie case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action. *Brown*, 801 F.3d at 908.

A retaliation claim arises under § 2615(a)(2) if an employer takes 'adverse action' against an employee who 'opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave.'" *Id.* at 909 (quoting *Pulczinski*, 691 F.3d at 1005-06).

2017 U.S. Dist. LEXIS 162179, at *8-10 (E.D. Mo. Oct. 2, 2017). Here, Plaintiff asserts two FMLA claims. (Doc. 23.)

With respect to identifying which FMLA claims Plaintiff is pursuing, "Count I - Family & Medical Leave Act," alleges that Plaintiff took FMLA leave; a supervisor criticized and ridiculed Plaintiff for taking FMLA leave; a supervisor indicated a concern that Plaintiff would take leave in the future; in early 2015, Plaintiff told his supervisor and others that he intended to take FMLA leave; shortly after he expressed his intentions to take FMLA leave, he was terminated; and that Defendant's purpose for the termination was to interfere with Plaintiff's FMLA rights because Defendant was motivated by a concern that Plaintiff would take additional FMLA leave. (*Id.* at ¶¶ 37, 39, 40, 41, 42.) This claim, while previously called an interference claim, is now referred to as an entitlement claim. *Pulczinski*, 691 F.3d at 1005 (Cases have described an FMLA claim arising under § 2615(a)(1), which occurs where an employer "refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act" as "an 'interference' claim, but that terminology may not illuminate, because all prohibited acts under § 2615(a) appear under the heading 'Interference with rights.' For clarity of analysis, we think it helpful to describe this as an 'entitlement' claim—an employee claims the denial of a benefit to which he is entitled under the statute."). Here, Plaintiff claims that Defendant

4

interfered with his entitlement to FMLA by terminating him after he informed his supervisor of his intention to take FMLA leave but before he completed the process for taking FMLA leave.

Plaintiff's second count, "Count II – Retaliation," alleges that Plaintiff took FMLA leave; in retaliation for taking that leave, Defendant assigned Plaintiff an excessive and unreasonable workload and terminated Plaintiff when Plaintiff indicated he intended to take additional FMLA leave; and that Defendant's retaliatory actions were motivated and caused by a desire to retaliate against Plaintiff for taking protected leave. (Doc. 23 at ¶¶ 50, 52, 53.) While labeled "retaliation," this is a claim for FMLA "discrimination." *See Peterson v. Martin Marietta Materials, Inc.,* 2016 U.S. Dist. LEXIS 64469, at *29 (N.D. Iowa May 17, 2016) (FMLA discrimination occurs where an employer retaliates against an employee for exercising FMLA rights, whereas FMLA retaliation occurs when "an employer takes 'adverse action' against an employee who opposes or complains about an employer's failure to comply with the requirements of FMLA.) (citing *Brown*, 801 F.3d at 908-909 and *Pulczinski*, 691 F.3d at 1005-1006). Here, Plaintiff claims that Defendant retaliated against him for exercising FMLA rights, and therefore discriminated against him in violation of FMLA.

## II.     Entitlement

Plaintiff has met his burden to establish a prima facie case for interference with his entitlement to FMLA leave. An employer interferes with an employee's entitlement to FMLA not only by refusing to authorize leave and discouraging an employee from using such leave, but also when it "takes other action to avoid responsibilities under the [FMLA]." *Brown*, 801 F.3d at 907. "An employee proceeding on this theory need not show that an employer acted with discriminatory intent." *Pulczinski*, 691 F.3d at 1005. It is clearly established in the Eighth Circuit that "every discharge of an employee while [he or she] is taking FMLA leave interferes with an employee's FMLA rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005). It follows that this logic applies to employees "precipitously terminated for inquiring about, or giving notice of, FMLA leave." *Rabe v. Nationwide Logistics, Inc.*, 530 F. Supp. 2d 1069, 1075 (E.D. Mo. 2008); *see also Verby v. PayPal, Inc.*, 2014 U.S. Dist. LEXIS 59261, at *47 (D. Neb. Apr. 29, 2014) ("The Eighth Circuit has . . . concluded that terminating an employee, in response to a qualifying employee's assertion of rights may also qualify as interference." "[I]f the plaintiff had evidence that she was fired because she was about to begin FMLA leave . . . it would arguably support either an [entitlement] claim, or a

[discrimination] claim, or both[.]") (citing *Dollar v. Smithway Motor Xpress, Inc.,* 710 F.3d 798, 806 (8th Cir. 2013) (other citations omitted).

In *Rabe*, the Court held that "[w]hether an alleged act occurs prior to, during, or subsequent to FMLA leave, that which deters an employee from participating in protected activities constitutes an interference or restraint of the employee's exercise of his rights." *Id.* (internal quotations and citations omitted) ("[I]t is uncontroverted that (i) on August 17, 2005, Mr. Rabe gave notice of his intent to take leave; (ii) on August 26, 2005, Mr. Rabe met with management to further discuss this inquiry; and (iii) on August 30, 2005, Mr. Rabe was terminated. Taken together, Mr. Rabe has sufficiently stated a prima face case of interference" with his entitlement to take FMLA leave.) Here, it is uncontroverted that in early 2015, Plaintiff told his supervisor he intended to take FMLA leave, and that shortly after Plaintiff expressed that intention he was terminated. Therefore, Plaintiff has established a prima facie case of interference with his entitlement to take FMLA leave.

However, the FMLA does not prohibit an employer from terminating an employee for reasons unrelated to the FMLA. *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 977-981 (8th Cir. 2005). "As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, …. the employer will be justified to interfere with an employee's FMLA leave rights." *Rabe*, 530 F. Supp. 2d at 1075 (quoting *Throneberry*, 403 F.3d at 978-979). The parties do not dispute that falsifying records is a lawful reason for termination. However, there are material factual disputes related to whether Plaintiff falsified records or Defendant believed Plaintiff falsified records. Viewing all inferences in the light most favorable to Plaintiff, Plaintiff's phone records from his desk phone were pulled the day after he expressed an intention to take FMLA leave, there are no written records of complaints from his customers regarding failure to make or return calls, he worked at other desks and used his cell phone to make calls on a regular basis, it was common knowledge that he used phones other than his desk phone, and Plaintiff offered explanations at his termination meeting for the discrepancy between his file notes and phone report from his desk telephone. In addition, Plaintiff received favorable marks during his performance review, the day before his phone records were pulled. Thus, for summary judgment purposes, Defendant has failed to sufficiently establish the existence of a lawful reason unrelated to Plaintiff's assertion that he was planning to take FMLA leave.

## III. Discrimination

When evaluating FMLA discrimination claims in the absence of direct evidence, the Court uses the *McDonnell-Douglas* burden-shifting framework. *Brown*, 801 F.3d at 908. Under this framework, the employee must first make a prima facie case for FMLA discrimination. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). If a prima facie case is established, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer articulates such a reason, the burden then shifts back to the employee to submit evidence that the provided reason is pretext, or in other words, a prohibited reason, rather than the proffered reason, actually motivated the employer's action. *Id.*

To establish FMLA discrimination, "an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Brown*, 801 F.3d at 908. The only element in dispute is whether Plaintiff has established a causal connection i.e. whether Plaintiff's protected FMLA activity "played a part" in Defendant's decision to terminate Plaintiff. *Pulczinski*, 691 F.3d at 1007. Plaintiff asserts that the day after he informed Defendant of his intention to take FMLA leave, Defendant took its first steps toward fabricating a reason for his termination, and Plaintiff was terminated shortly after. Although timing alone is typically insufficient to establish causation, given such close proximity here, coupled with Caudill's alleged statements about Plaintiff's previous leave, and the disputes regarding the veracity of the falsification allegations, explanations, and investigation, the causation element has been sufficiently established. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) ("Even if temporal proximity alone is insufficient to establish causation, the employee may attempt to prove causation by providing evidence of the employer's discriminatory comments.") (citation omitted).

Because Plaintiff has established a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. "The employer's responsibility to present proof of a non-discriminatory, legitimate justification for its action is not an onerous task." *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014) (citation omitted). As discussed above, the parties agree that falsifying records is a legitimate reason for termination. Thus, the burden shifts back to Plaintiff to show that that Defendant's proffered reason is merely pretext for discrimination.

7

Pretext can be shown in a number of ways, for example, "by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, . . . or that the employer deviated from its policies." *Ebersole*, 758 F.3d at 925. Factual disputes preclude the Court from determining whether Defendant's reason for terminating Plaintiff – falsifying business records – has any basis in fact. As previously mentioned, the parties dispute whether adjustors used phones other than the phones on their desk for making business phone calls; whether it was common knowledge that Plaintiff used other phones on a regular basis; and whether Plaintiff offered any explanation for the discrepancy between his file notes and the phone report from his desk telephone. Moreover, factual disputes preclude the Court from determining whether Defendant conducted the investigation in good faith, and therefore, whether Defendant honestly believed Plaintiff falsified records. While the Court does not "sit as a super-personnel department" to review business decisions, it does review the decisions "to the extent those judgments involve intentional discrimination." *Rabe*, 530 F. Supp. 2d at 1077. Plaintiff argues at length that Defendant's investigation was incomplete in certain respects, and Defendant points to cases such as *Edwards v. Hiland Roberts Dairy, Co.*, which stand for the proposition that "a shortcoming in an internal investigation alone, without additional evidence of pretext, would not suffice to support an inference of discrimination on the part of the employer." 860 F.3d 1121, 1127 (8th Cir. 2017). However, Plaintiff has provided additional evidence of pretext such as timing and a positive review. While other facts weigh in Defendant's favor such as the fact that other employees were terminated for falsifying records, this does not negate the fact that Plaintiff has set forth evidence from which a reasonable juror could find that Defendant's proffered explanation was merely pretextual. Based on the foregoing, Plaintiff's claim that Defendant discriminated against him for exercising FMLA rights survives summary judgment.

## Conclusion

Accordingly, Defendant's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: November 9, 2017